# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1884, IN THE SIXTY-NINTH YEAR OF THE STATE.

---

No. 11,615.

CHISSOM ET AL. *v.* BARBOUR ET AL.

SPECIAL JUDGE.—*Appointment of.*—Where the order appointing an attorney as special judge, upon an application for change of judge, recites that it is deemed difficult to procure a judge of another court without unreasonable delay, there is no room to question the appointment on the ground that no effort was made to procure another judge.

PRACTICE.—*Change of Venue.*—*Delay.*—Where a motion for a change of venue from the county is supported by a proper affidavit, but the counsel presenting the motion states in open court that the purpose of the motion is delay, the motion should be struck from the files.

JUDGMENT.—*Nunc pro Tunc Entry.*—*Evidence.*—The power of a court to make *nunc pro tunc* entries in proper cases is inherent, and is not governed by section 396, R. S. 1881, and may be made upon memoranda by the clerk in his issue docket, and upon a special finding of facts by the court in the cause, with his conclusions of law thereon.

SAME.—*Time.*—Such *nunc pro tunc* entry of a judgment should be made as of the date when the judgment was actually pronounced.

SAME.—*Bill of Exceptions.*—*Motion.*—*Semble*, that a motion for a *nunc pro tunc* entry is no part of the record unless made so by bill of exceptions or order of court.

From the Marion Circuit Court.

*I. Klingensmith*, for appellants.

*R. B. Duncan, J. S. Duncan, C. W. Smith* and *J. R. Wilson*, for appellees.

ZOLLARS, C. J.—It is recited in the record before us that on the 9th day of March, 1883, appellees filed a motion in the above entitled cause to have a judgment in their favor entered *nunc pro tunc.*

It is contended by appellees that the motion is not in the record, because not brought into it by a bill of exceptions, and in support of that contention they cite us to the case of *Ellis* v. *Keller*, 82 Ind. 524. The case before us seems to fall within the ruling in that case, but we have concluded to examine it upon its merits. It is stated in appellees' motion for a *nunc pro tunc* entry, that on the 1st day of July, 1867, judgment was rendered in their favor for costs against appellants, who were, and are, the plaintiffs in the action, and that the clerk neglected and failed to make a formal entry of that judgment. After various rulings, the court below heard the evidence and ordered and adjudged that the *nunc pro tunc* entry should be made, as asked by appellees. From this ruling appellants have appealed. The action by appellants seems to have been to have a deed declared to be a mortgage, and to thus recover the real estate therein described.

The several reasons urged in this court for a reversal of the judgment ordering the *nunc pro tunc* entry, we notice in the order in which they are presented in argument. Upon the application of appellants, the venue was changed from the judge. Upon the granting of the change, Hon. James E. Heller, a practicing attorney of the Marion county bar, was appointed as a special judge to hear and determine the case presented by the motion for a *nunc pro tunc* entry. It is claimed in argument that the appointment was unlawful, because no effort was made to procure a judge of some court to sit in the case before appointing an attorney. Section 415, R. S. 1881, provides that when a change of venue is granted

from the judge, as was done here, the court or judge shall call a judge of any court of general jurisdiction, etc., to preside in and try the case, " or, if it shall be difficult, in the opinion of the court, for any cause, to procure the attendance of such judge, the court, in order to prevent delay, may appoint any competent and disinterested attorney of this State," etc.   The case before us is brought clearly within this statute.   It is recited in the record as made by the clerk, and in a bill of exceptions, that in the opinion of the court it was difficult to procure the attendance of any other judge without unreasonable delay, and that Mr. Heller was appointed to prevent such delay, etc.

The court overruled a motion for a change of venue from the county and from the judicial circuit.   This motion was supported by an affidavit, in which it is stated that on account of the influence of appellees over the citizens of Marion county, and local odium and prejudice, etc., appellants could not have a fair trial in the county.   This motion was properly overruled, for several reasons.   We need mention but two.   In the first place, there was a rule of court that applications for a change of venue should be made not later than the day before the day set for the hearing or trial.   Works Pr., sec. 1273, and cases there cited.   In the second place, the record shows that at the time the motion and affidavit for the change were filed and presented to the court, counsel for appellants stated that they were filed and presented for the purpose of procuring, time.

It seems that the hearing had been postponed at a previous term on the agreement, on the part of appellants, that they would submit the matter at, or within a few days after, the opening of the term at which this application for a change of venue was made.   Upon the opening of the term, applications for postponement were renewed and overruled.   The application for a change of judge was also accompanied with the statement that it was made for the purpose of procuring further time.   Such a statement amounts, really, to a confes-

sion of perjury by the party making the application.   Upon
such a statement being made, the applications should have
been struck from the files.   The court was not only justified
in overruling the motion, but would have been justified in
a resort to measures much more severe.   The courts will
neither encourage, countenance nor tolerate a practice that in-
volves such moral turpitude.

It is contended further, on the part of appellants, that the
power to order the *nunc pro tunc* entry is derived solely from
section 396, R. S. 1881, and that under that section the ap-
plication should have been made within two years after the
judgment was pronounced.   That this is not so, has been sev-
eral times decided by this court.   In the case of *Burson* v.
*Blair*, 12 Ind. 371, it was said that all courts possess inherent
power to correct clerical mistakes in their proceedings.   In the
case of *Miller* v. *Royce*, 60 Ind. 189, the application was for
a *nunc pro tunc* entry of the amount of the judgment, that
having been left in blank by the clerk making the entry of
the judgment.   The application was made more than twelve
years after the rendition of the judgment.   In the opinion by
this court, it was said : " It is well settled, by numerous de-
cisions of this court, that the courts of this State are pos-
sessed of full and ample powers to correct mistakes and sup-
ply omissions in their records, whenever and wherever the
records supply the means for making such corrections or
supplying such omissions.   The powers of the courts in the
premises are derived chiefly from acts of Parliament, which,
with the common law of England, are parts of the laws of
this State, and especially from 8 Henry VI., c. 12."

The case of *Makepeace* v. *Lukens*, 27 Ind. 435, was an ap-
plication for a *nunc pro tunc* entry of an order made by the
court, but not entered by the clerk.   After a learned review
of the English statutes, including 8 Henry VI., c. 12, it was
said that under the authority of these statutes alone, amend-
ments can be made of the record, where the proceedings are

no longer *in fieri*, and the term is passed in which the record was made.

The case of *Smith* v. *State*, 71 Ind. 250, was also an application for a *nunc pro tunc* entry. There it was said again that the courts of the State are possessed of full and ample powers to correct mistakes and supply omissions in their records, whenever and wherever the record affords the means for making such corrections and supplying such omissions, and that these powers are derived chiefly from 8 Henry VI., c. 12. See, also, *Sidener* v. *Coons*, 83 Ind. 183, where the case of *Miller* v. *Royce*, *supra*, is cited and quoted from with approbation. See, also, as bearing upon the question, *Ellis* v. *Keller*, *supra*, and *Newhouse* v. *Martin*, 68 Ind. 224.

The case of *Reily* v. *Burton*, 71 Ind. 118, restates the proposition, that the power of the courts to order *nunc pro tunc* entries of their judgments is derived chiefly from 8 Henry VI., c. 12, and holds valid such an entry made three years after the rendition of the judgment. Section 396, R. S. 1881, relied upon by appellants, provides that the courts shall relieve a party from a judgment taken against him through his excusable neglect, etc., "and supply an omission in any proceedings on complaint or motion filed within two years." The "omission in the proceedings," we think, relates to the proceedings in the action, and not to the simple neglect of the clerk to enter up the proceedings. The proceedings is the thing itself—what is actually done; the entry of the clerk is simply evidence of what has been done. The proceedings and the entry of them are different, as the rendition of judgment and the entry of judgment are different and distinct each from the other. As said in the case of *Reily* v. *Burton*, *supra*, the rendition of the judgment is the act of the court, while the entry of the judgment is the act of the clerk of the court. See, also, *Anderson* v. *Mitchell*, 58 Ind. 592. If we are correct in this construction of the statute, and if the former cases above cited are correct, it follows that the limitation of two years does not apply to a case like this, where it

is asked simply that the entry of the proceedings, the judgment in this case, shall be made as of the date when the proceedings were had.

It is contended still further by appellants, that there was nothing, or at least no evidence of anything, upon which to base an order and judgment for a *nunc pro tunc* entry of a judgment. Upon the hearing below, appellees introduced in evidence entries made by the clerk in a docket, called the clerk's issue docket. These entries were made in the case, following the proper entitling of the case, and show the defendants (appellees) ruled to answer, and the other various steps in the case, including the submission of the cause to the court, finding for defendants, new trial overruled, sixty days to plaintiffs (appellants) to file a bill of exceptions, and finally, "judgment vs. plaintiffs for costs. Order-book 24, page 582." Following each one of the entries in the issue docket is a like reference to different pages of this same order-book. Whether any of these entries were in the order-book at length, we can not tell certainly from the record. No order-book containing these several entries was introduced in evidence, and there is nothing in the record or the briefs of counsel to explain these references to the order-book.

Appellees also introduced in evidence, from the order-book referred to in the issue docket, and at the page last indicated, a special finding of facts made by Judge Hines who tried the case, and his conclusions of law upon those facts in favor of appellees. This entry from the order-book shows that appellants excepted to the conclusions of law, moved for a new trial, and, upon that being overruled, were granted time in which to file a bill of exceptions. There is no judgment for costs in this entry from the order-book. That seems to be found alone in the clerk's issue docket. It is not found in the court's docket, and, because not found there, appellants contend that it can not be made a basis upon which to predicate a *nunc pro tunc* entry; that there is nothing to show that the clerk made the note of the judgment by order of

the court. In short, that there is nothing to show that a judgment was rendered.

In Daniell's Chancery Pleading and Practice, page 1017, it was said, that orders to enter decrees *nunc pro tunc* will be made after a very long interval has elapsed from the time of pronouncing the decree, and even where the original decree has been lost, the court has permitted it to be entered *nunc pro tunc*, from the official copy, after the lapse of twenty-three years.

In the case of *State, ex rel.,* v. *Mayor, etc.,* 24 Ala. 701, it was held that a *nunc pro tunc* entry may be made on the written opinion of the judge, when he is required to file such an opinion.

In *Yonge* v. *Broxson,* 23 Ala. 684, it was said : " The motion docket is a book of the court required by law to be kept by the clerk, and the entries in it may be looked to as showing the orders taken by the court, and are sufficient evidence to authorize the rendition of a judgment *nunc pro tunc.*" In the case of *Sidener* v. *Coons, supra,* it was held that the judgment could be corrected by the note sued on. See, also, to same effect, *Conway* v. *Day,* 79 Ind. 318 ; *Mitchell* v. *Lincoln,* 78 Ind. 531. We give these cases simply as examples of what may be a sufficient basis upon which to predicate a *nunc pro tunc* entry.

Without extending this opinion by elaboration, we think that the special finding of facts, and the conclusions of law made thereon by the court, and the note made by the clerk in a docket which the law requires him to keep, R. S. 1881, section 402, without reference to the affidavit of Judge Hines, that he rendered and announced the judgment, are sufficient to authorize the court to order the *nunc pro tunc* entry. See, again, *Makepeace* v. *Lukens, supra.*

A motion was made below to modify the order, so that the judgment might be rendered and entered as of the date of these proceedings. In answer to this, it is sufficient to say that there was no occasion for rendering a judgment, nor

would it have been proper, because a judgment had already been rendered, and this proceeding was simply to have that judgment entered as of the proper date. The fact that appellants may not now appeal from that judgment, is not in the way of the *nunc pro tunc* entry. If they wished to appeal, they might have had the judgment entered in time. Some other questions are discussed, but it is not necessary to extend this opinion in an examination of them, as they would not change the result.

Judgment affirmed, with costs.

Filed Jan. 24, 1885.